XONU INTERCONTINENTAL INDUSTRIES, Appellant,

v.

STAUFFER CHEMICAL COMPANY, Mathis Grain ad Elevator Corp. and Helena Chemical Company, Appellees.

No. 1436.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Peter G. Dorflinger, Houston, for appellant.

F. Van Huseman, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit for damage to a crop. Xonu Intercontinental Industries, Inc., and T. A. Setliff, as Plaintiffs, sued Stauffer Chemical Company, Mathis Grain and Elevator Corporation, and Helena Chemical Company, (Defendants), to recover damages to their crop. This suit was based on theories of products liability, warranty, negligence, and deceptive trade practices. Trial was to a jury. After plaintiffs had rested, the defendants moved for instructed verdict. As to the cause of action asserted by plaintiff Xonu, the motions were granted. But, as to the cause of action asserted by the plaintiff Setliff, the motions were denied. Plaintiff Setliff and defendant Stauffer Chemical Company thereafter settled their controversy, and plaintiff Setliff took a non-suit as to the other defendants. Judgment was finally rendered against plaintiff Xonu, which alone has perfected its appeal to this Court.

Plaintiff Xonu planted a total of 600 acres of spinach in 1975 on its 2200 acre farm. It applied a chemical to the spinach for the control of weeds, called "RO–NEET." In the first planting of 248 acres, weeds emerged over the entire tract. Plaintiff replanted spinach in 70 acres of the 248 acres and reapplied "RO–NEET" for weed control. Plaintiff experienced the

same difficulty on the same replanted 70 acres. Plaintiff subsequently planted an additional 350 acres of spinach and applied "RO–NEET" from a separate batch of chemicals. This application was effective and controlled the weeds. Plaintiff was unable to harvest the 248 acres because of ineffective weed control.

At the close of plaintiff's case, the trial court granted an instructed verdict in favor of defendants because plaintiff had not proved its damages to the spinach crop. In a single point of error, the plaintiff contends here that the trial court erred in granting a directed verdict in favor of the defendants because there was some evidence of damages sufficient to require the submission of the issue to the jury.

■■■ The law is, where an instructed verdict for a defendant has been granted, that an appellate court must accept as true the evidence in the record supporting plaintiff's allegations (of damages), disregarding all evidence and inferences to the contrary. All conflicts in the evidence must be resolved in favor of the plaintiff, and all inferences from the evidence must be viewed in the light most favorable to the plaintiff's cause of action. *Constant v. Howe,* 436 S.W.2d 115 (Tex.Sup.1968); *Hart v. Van Zandt,* 399 S.W.2d 791, 793 (Tex.Sup. 1965). Where an instructed verdict has been granted because of the lack of proof as to damages, it is our duty to examine the entire statement of facts to determine if there is any evidence of probative value that would support such an issue.

■■ The proper measure of damages to a growing crop is the market value of the crop, less the cost of harvesting and marketing. The leading case defining such rule is *International & G. N. R. Co. v. Pape,* 73 Tex. 501, 11 S.W. 526, 527 (Tex.Sup.1889), by the Supreme Court of Texas. The Court said:

"It seems to us that, as a general rule, the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the

expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market, and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crop with as much certainty as can be attained by any other method."

Following the foregoing rules, we find in the record that the number of acres damaged by the "RO–NEET" chemical application was 248 acres. There was competent evidence that the probable yield was between five and six tons of spinach per acre. Plaintiff also introduced evidence that it had a contract with Steel Canning Company of Springdale, Arkansas, for $70.00 per ton for the spinach. This established the amount and value of the yield when the crop matured. The appellees contend, however, that there was no evidence of the cost of harvesting and marketing the crop. Specifically, there was no evidence of the: expense of cultivation, cost of preparing the soil, cost of planting the crop, cost of harvesting the spinach, expense in finishing the crop, and the cost of getting the crop to the market. The appellees say this is similar to the *International & G. N. R. Co. v. Pape,* supra, where Justice Gaines stated:

"But proof of the additional amount of cotton which the plaintiff would have made but for the overflow, and the value of such cotton when ready for market, without evidence as to the expense of cultivating, gathering, preparing it (the crop) for and placing it in market, did not show the value of the crop at the time of the injury, and hence did not afford the proper means of increasing the plaintiff's damage. The testimony, without the additional evidence of the expense of maturing the cotton and placing it in market, should have been excluded."

The appellant, on the other hand, asserts that it proved such costs by two methods. First, it claims that its bookkeeper, Mr. Hollon, produced some evidence from the following question and answer:

Q: All right. At the time, Mr. Hollon, did you make a computation as to what the average cost per acre of putting the spinach crop was in the two hundred forty-eight acres that we're talking about in this lawsuit?

A: We come up with $214.59.

■ We hold that this single statement is insufficient to prove the cost of harvesting and marketing the crop. Xonu conceded as much, when their attorney stated in its brief, ". . . admittedly there is no direct evidence in the record as to plaintiff's cost of harvesting the spinach." Witness Hollon did not testify as to the cost of producing the crop, and did not estimate the cost of finishing it, either. He admitted that he had had no farming experience and was not familiar with farming operations. The information he used as background for his statement, "We come up with $214.59," was from the bank stubs in the checkbook that he supervised issuing and signing. As bookkeeper, Hollon testified that Xonu farmed in excess of 2200 acres, and that the expense of farming such acreage exceeded the sum of $200,000 in the year 1975. He made no further explanation of how he arrived at the figure of $214.59, which he said was the average cost per acre of "putting the spinach crop" on the 248 acres. There was no specific evidence of the cost per acre of producing the spinach crop.

■ Hollon's testimony has no probative value for another reason. It was hearsay. As such, it would not support a jury finding. Compare *Griggs Furniture Co. v. Bufkin,* 348 S.W.2d 867 (Tex.Civ.App.—Amarillo 1961, writ ref'd, n. r. e.); *Wood v. Self,* 362 S.W.2d 188 (Tex.Civ.App.—Dallas 1962, no writ); *Blume v. Weaver,* 412 S.W.2d 760 (Tex.Civ.App.—Eastland 1967, no writ); *Lubbering v. Ellison,* 342 S.W.2d 796 (Tex. Civ.App.—San Antonio 1961, no writ); *Merrill v. Tropoli,* 414 S.W.2d 474 (Tex.Civ.App. —Waco 1967, no writ).

■ Summaries of business records are also inadmissible as hearsay, where no proper predicate has been laid. This is so when the matters set forth in the writings were not shown to be within the knowledge of the witness. *Jackson v. Fontaine Clinics, Inc.,* 499 S.W.2d 87 (Tex.Sup.1976); *Black Lake Pipe Line Co. v. Union Const. Co.,* 538 S.W.2d 80 (Tex.Sup.1976); *Heard v. Howard,* 215 S.W.2d 364 (Tex.Civ.App.—Fort Worth 1948, no writ).

There was no evidence that the check stubs were summaries of the business records of Xonu since they were not offered or introduced as business records. Appellant Xonu did not attempt to prove the records under the provisions of Tex.Rev.Civ.Stat. Ann. art. 3737.

Xonu had commercially farmed spinach crops for seven previous years. It harvested 350 acres, unaffected by chemical damage, in 1975. This was the same crop year as the year in question. There was no question that they had available precise figures as to the cost of harvesting and marketing. It seems to us they could have supplied the missing elements of their damages had they chosen to do so. Here, they offered no evidence whatsoever as to the estimated cost of harvesting, marketing, or other actual expenses relevant to cultivation and growing of the spinach.

■ Next, plaintiff Xonu claims that its co-plaintiff, Ronnie Setliff, proved not only his damages, but plaintiff Xonu's damages as well. Plaintiff Xonu contends that admissible testimony as to the probable yield on Setliff's adjoining land, with a showing that the conditions surrounding the two tracts of land and the two crops were similar, would be some evidence to raise an issue of damages sufficient to go to the jury, citing *Lone Star Canal Co. v. Broussard,* 176 S.W. 649 (Tex.Civ.App.—Galveston 1915, writ dism'd). We agree that this would be true if the conditions surrounding the two tracts and crops were similar. The evidence showed that Setliff and Xonu farmed bordering tracts. Xonu purchased its fertilizer, tractor fuel, seed, herbicide, and other materials necessary for farming in the same general area and market as Setliff.

However, the record affirmatively shows the dissimilarities between the two tracts

and the two crops to such an extent that Setliff's evidence had no probative value as to Xonu's damage. The record shows that the soil on the two farms was different. The equipment used (age and type) was different. The costs of operating the equipment and the cultivation techniques used by the two farming operations were different. The crops on the two farms were planted at different times. The chemicals used, and the use of herbicides were not the same. Setliff's family operation was less than one-half the size of plaintiff Xonu's corporate operation. The yield per acre was less in Setliff's case by approximately 28%. Xonu testified that his practice in harvesting the spinach was to use hoers to weed out the grasses that normally occur. The Setliffs testified that they would wait till the first freeze to kill the grass, rather than utilizing hoers. And finally, there was no evidence that the cost basis of Setliff's operation was essentially similar to plaintiff Xonu's. We conclude that Setliff's estimate that his cost to finish his crop at $50.00 per acre had no probative value as to the cost of finishing Xonu's crop.

In a case somewhat similar to the one before us, Justice Barrow, writing for the San Antonio Court of Civil Appeals in *Lance v. City of Mission,* 308 S.W.2d 546, 548 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.), said:

> "It is also apparent that appellant wholly failed to prove a proper measure of damages. Appellant's evidence showed that his crops were destroyed in the field. He offered evidence of the probable yield and the value of some of his crops at the market place, some miles from the field, but offered no evidence of the cost of harvesting and marketing his crops. The measure of damages in such cases is the market value of the crops less the cost of harvesting and marketing." Citing authorities.

The Supreme Court of Texas noted in *Int'l Harvester Co. v. Kesey,* 507 S.W.2d 195, 197 (Tex.Sup.1974), that "The law does not demand perfect proof of damages for crop losses but liberally permits estimates of the value and probable yield of crops, as well as the expense of cultivating and putting them on the market." The Court went on to say, however, that: The law does require that crop losses must be established with reasonable certainty. This plaintiff Xonu failed to do.

We hold that the trial court properly instructed a verdict against plaintiff Xonu.

AFFIRMED.