Melvin HUNT and Isabelle Hunt, Individually and as Independent Administrator of the Estate of Isabelle Sinclair, Appellants,

v.

HNG OIL COMPANY, Appellee.

No. 13–89–189–CV.

Court of Appeals of Texas, Corpus Christi.

May 3, 1990.

Rehearing Overruled May 24, 1990.

Katherine L. Butler, Margaret A. Harris, Butler & Harris, Houston, for appellants.

John E. O'Neill, Thomas A. Croft, Warren W. Harris, Porter & Clements, Lewis P. Chandler, Jr., Houston, Dean Patton, Morrill & Patton, Beeville, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

This appeal concerns the rights and liabilities of a "good faith" oil and gas trespasser. The Hunts, lessors and appellants, sued HNG, lessee and appellee, for trespass and conversion, claiming damages for HNG's alleged wrongful entry onto their land and conversion of their natural gas. The trial court rendered judgment for HNG after a jury answered all questions favorable to HNG. The Hunts assert twenty-two points of error. We affirm the trial court's judgment.

This dispute arises from HNG's completion of a well on the Hunts' land. In December 1985, HNG drilled a well (HNG Dewey Sinclair No. 2) to a depth of 11,002 feet on the Hunts' land. In February 1986, the well was determined to be a dry hole at this depth, and HNG plugged back the well to 10,000 feet, pending a completion attempt above 9,800 feet. Although the well was dry deep, HNG determined that the well was promising at shallower depths. Thereafter, HNG unsuccessfully sought cost participation from the other working interest owners for the completion of the well at a shallower depth. Ultimately, in September 1986, HNG completed the well at the shallow depth, assuming the full cost of completion itself. The well produced gas for ten months, and in July 1987, HNG determined that production was no longer feasible and ceased its operations.

The Hunts sued HNG for HNG's entry and removal of gas from September 1986 to July 1987. The Hunts claim that the oil and gas lease executed between the Hunts and HNG had expired, by its own terms, sixty days after February 8, 1986, the date on which the Hunts allege that HNG stopped its operations.

On appeal, the Hunts contend that they are entitled to judgment as a matter of law

for HNG's trespass onto their land and its conversion of their natural gas and well. Their points of error challenge the legal and factual sufficiency of the evidence and claim error in the jury charge. The Hunts wholly fail to challenge the jury's finding of good faith on the part of HNG when entering the Hunts' land in September 1986. There is evidence to support this finding, namely, that HNG believed in good faith that it had the right to enter and develop the minerals under a prior lease executed between the Hunts and HNG.

In its brief, *without conceding error*, HNG urges this Court to presume that all of the Hunts' twenty-two points of error have merit. In our so doing, HNG contends that the Hunts cannot prevail because, as a matter of law, they have no damages. We agree with HNG and find no damages to the Hunts, so we dispose of the Hunts' appeal by addressing the damage issue alone.

If we assume *arguendo* that the lease expired prior to HNG's entry, then HNG trespassed and converted the Hunts' natural gas. However, HNG was conclusively established as a good faith trespasser by virtue of the unchallenged jury finding and the evidence in support thereof. The issue for our resolution concerns the measure of damages for a defendant's good faith trespass and removal of minerals from a plaintiff's land.

■ The leading case on the measure of damages for a good faith oil and gas trespass is *Bender v. Brooks*, 103 Tex. 329, 127 S.W. 168 (1910). In *Bender*, the Supreme Court rejected the "usual royalty" measure of damages (the landowner recovers the royalty commonly allowed to landowners in that vicinity) in favor of a rule allowing the innocent trespasser remuneration for his cost of mining, extracting, and hoisting the minerals to the surface. *Bender*, 127 S.W. at 170. Using the analogous situation of

innocent purchasers of land adding valuable improvements, the Court invoked principles of equity in calculating the landowner's damages, allowing the trespasser to deduct his costs from the value of the minerals at the surface. *Id.* at 171. Shortly thereafter, the Supreme Court, citing *Bender*, acknowledged that the landowner's title to the severed minerals becomes even more definite when the minerals are brought to the surface, putting to rest any questions regarding title to the minerals. *See Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co.*, 106 Tex. 94, 157 S.W. 737, 740 (1913). On the issue of damages, the Court further stated, "If, however, the person who produced the oil acted in good faith, he would be entitled to have deducted the cost of bringing it to the surface *and to the market.*" *Id.* (emphasis added).[1] The Beaumont court reasoned that in recompensing a trespasser, the landowner is not punished because development is necessary to bring the minerals to the surface, and the landowner would otherwise have to pay for the extraction. *Taylor v. Higgins Oil & Fuel Co.*, 2 S.W.2d 288, 304 (Tex.Civ.App.—Beaumont 1928, no writ).

The *Bender* rule, that a good faith trespasser is liable in damages only for the value of the minerals removed less drilling and operating costs, remains intact. *See Mayfield v. de Benavides*, 693 S.W.2d 500, 506 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Dahlstrom Corp. v. Martin*, 582 S.W.2d 159, 161 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

■ Applying the rule to the present case, HNG would be liable for the revenues attributable to the extracted gas minus HNG's costs of production. The parties entered the following stipulation regarding the revenues received and production costs incurred by HNG:

1) Revenue from gas and condensate.................................$239,333
2) Drilling costs....................................................$887,303
3) Completion costs (at shallow depth)................................$153,114
4) Production taxes..................................................$ 15,041

---

**1.** If a defendant wishes to recover (or deduct) his cost of bringing the minerals to the market, he has the burden of pleading it and putting on evidence. *Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co.*, 106 Tex. 94, 157 S.W. 737, 740 (1913). HNG sustained this burden.

5) Transportation charges.............................................$ 17,368
6) Operating expenses ...............................................$  5,907
7) Royalties paid to the Hunts ......................................$ 53,908

Applying the *Bender* measure of damages to the present facts, we confront an uncertain element of the rule—exactly what expenses the innocent trespasser should be allowed to include when calculating his costs of production. Thus, when a lessee drills a well under a valid lease and the lease subsequently expires and then the lessee enters as a good faith trespasser, reworking the well and producing gas, what expenses comprise its costs of production to be deducted from the gas revenues? It is clear, under *Bender* and its progeny, that HNG may properly deduct its completion costs, production taxes, transportation charges, operating expenses, and royalties paid to the Hunts because these expenses were incurred while HNG was a good faith trespasser. The more difficult question involves the deduction of HNG's drilling costs; these costs were incurred when HNG was operating under a valid lease and not as a trespasser.

■ Previously, the Texas Supreme Court has addressed the situation in which a trespasser enters upon the land of another, drills, and removes minerals. Nevertheless, the Court has not confronted the situation where a trespasser enters, reworks a well that it had previously drilled, removes minerals, and then claims an offset for its previous drilling costs. A similar case having at least some approval of the Supreme Court is *Broadway v. Stone*, 15 S.W.2d 230 (Tex.Comm'n App.1929, holding approved).[2] In *Broadway*, a lessee drilled oil wells on a tract, believing that its lease covered the interests of all owners of the land and unaware that the Broadways owned an outstanding one-thirty-sixth interest. *Broadway*, 15 S.W.2d at 231. The wells produced large quantities of oil and gas. *Id.* The

Broadways, likewise ignorant of their interest in the land, conveyed to Miller. *Id.* At the time Miller acquired the interest in the land, there existed permanent improvements made by the lessee: four producing wells and one well in the process of construction which produced oil after completion. *Id.* at 232. The Commission held that Miller's interest would be charged, in equity, with a proportionate value of the improvements, less a like proportion of the value of the oil and gas taken from the land by the lessee. *Id.* Citing *Bender*, the Commission held that the lessee could deduct its completion expenses for the unfinished well and its operating expenses for the other four wells. *Id.* As to Miller, the sole plaintiff, the lessee was a good faith trespasser after drilling the four wells and before completing the fifth. The lessee was not permitted to offset the cost of the initial drilling of the four wells.

We find the situation in *Broadway* sufficiently analogous to our facts. HNG did not become a good faith trespasser until after the initial drilling of the well; therefore, it is not entitled to reimbursement for this improvement made prior to the expiration of the lease.

When totaling HNG's completion costs, production taxes, transportation charges, operating expenses, and royalties paid to the Hunts, we find that HNG's costs exceeded its revenue by $6,005. Therefore, even if all of the Hunts' points of error are meritorious, they have no damages. The Hunts cannot, as a matter of law, show harmful error. The judgment of the trial court is AFFIRMED. *See* Tex.R.App.P. 81(b)(1) and 90(a).

**2.** The Amarillo court has addressed the issue of whether drilling costs incurred prior to the expiration of a lease are recoverable, when the well later produces in paying quantities, as valuable improvements made in good faith. *See Steeple Oil & Gas Corp. v. Amend*, 392 S.W.2d 744 (Tex.Civ.App.—Amarillo), *rev'd on other grounds*, 394 S.W.2d 789 (Tex.1965); *Thoreson v. Fox*, 390 S.W.2d 308 (Tex.Civ.App.—Amarillo 1965), *rev'd on other grounds*, 398 S.W.2d 88 (Tex.1966). In one case, the drilling costs were recoverable, and in the other, they were not.

The Hunts' motion to accept a supplemental transcript for filing, which was ordered carried with this appeal, has been rendered moot by our decision and is therefore DENIED.

## OPINION ON MOTION FOR REHEARING

On rehearing, the Hunts claim that we erred by failing to address their point of error *allegedly* attacking the jury's failure to find a breach of the duty of good faith and fair dealing by HNG.

 This Court has held that absent some "special relationship" created between the parties, the relationship of a lessor and lessee is purely contractual. *See Cambridge Oil Co. v. Huggins*, 765 S.W.2d 540, 544 (Tex.App—Corpus Christi 1989, writ denied). Thus, there is no cause of action for the breach of the duty of good faith and fair dealing in the ordinary lessor/lessee relationship.

We find neither evidence in the record supporting a special relationship nor argument in the Hunt's brief directed to such a claim. Indeed, the concepts of special relationship and breach of good faith and fair dealing are never addressed or even alluded to in the Hunts' brief. *See* Tex.R. App.P. 74(f). The Hunts' motion for rehearing is denied.