Maxvill v. Royal 







NUMBER 13-88-585-CV

COURT OF APPEALS

THIRTEENTH JUDICIAL DISTRICT OF TEXAS

CORPUS CHRISTI



* * * * * * *



MAXVILL-GLASCO DRILLING COMPANY, INC. Appellant,



v.




ROYAL OIL AND GAS CORPORATION, Appellee.



* * * * * * *

On appeal from the 347th District Court of Nueces County, Texas. 

* * * * * * *

Before Fortunato P. Benavides, Robert J. Seerden, and

J. Bonner Dorsey, J.J.

* * * * * * *


O P I N I O N

 This is an action for tortious interference with rights under an oil and gas lease. The trial court granted an instructed verdict
for appellee, Royal Oil and Gas Corporation. Appellant, Maxvill-Glasco Drilling Company, Inc., raises two points of error
asserting that the trial court erred in directing the verdict because there is evidence of damages and in refusing to admit
testimony concerning an alleged oral addendum to the oil and gas lease. We affirm the judgment of the trial court.

 Royal entered into an oil and gas lease with Mr. and Mrs. Foster covering 320 acres of land in McMullen County. The
lease was for depths between 7,000 feet and 12,500 feet. At the insistence of the Fosters, Royal released the depths below
9,650 feet. The Fosters subsequently entered into an oil and gas lease with Maxvill covering 80 acres of the tract from a
depth of 9,650 feet to 9,800 feet. That lease contained a provision requiring Maxvill to begin drilling a well on or before
August 23, 1982. Maxvill sought and obtained a permit to drill a well from the Railroad Commission of Texas which was
granted on August 4, 1982. After the Commission granted the permit, but before drilling operations began, Royal filed a
protest with the Commission seeking to cancel the permit. On August 23, 1982, the same day the Foster-Maxvill lease was
to expire, Royal withdrew its previously filed protest. No well was drilled and the lease expired under its own terms.

 Royal subsequently re-leased those particular depths from the Fosters, and drilled a well on the same location into the
same zone for which Maxvill had obtained the permit. From 1983 through the date of trial, Royal produced oil and gas
from that well. Maxvill sued Royal alleging that Royal had tortiously interfered with its oil and gas lease by filing a protest
with the Commission. Maxvill argues that Royal's protest prevented it from drilling its planned well within the time period
their lease required. At the close of Maxvill's evidence, the trial court granted a directed verdict. Maxvill appeals from the
take-nothing judgment. 

 By its first point of error, appellant contends the trial court erred in granting the motion because there was some evidence
of lost profits. In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against
whom the verdict was rendered and disregard all contrary evidence and inferences. Qantel Business Syss. v. Custom
Controls, 761 S.W.2d 302, 303-04 (Tex. 1988); Saenz v. Starry, 774 S.W.2d 730, 731 (Tex. App.--Corpus Christi 1989,
writ denied). If we determine that there is any evidence of probative value which raises a material fact issue, then the
judgment must be reversed and remanded for the jury's determination of that issue. Qantel, 761 S.W.2d at 303-04; Saenz,
774 S.W.2d at 731.

 Generally, the basic measure of actual damages for tortious interference with a contract is the same as the measure of
damages for the breach of the contract. American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Co., 34 Tex. Sup.
J. 20, 23 (October 10, 1990); Capital Title Co. v. Donaldson, 739 S.W.2d 384, 391 (Tex. App.--Dallas 1987, no writ). The
court attempts to put the plaintiff in the same economic position that he would have been in had there been no breach or
interference with the contract. Transcontinental, 34 Tex. Sup. J. at 23. Appellant, in its pleadings, sought to recover for
"net profits" that were lost due to Royal's alleged tortious interference with an oil and gas lease. Appellant concedes that
the measure of damages in this case are lost profits. When a party undertakes to prove a certain type of damage, the burden
is on that party to prove certain costs that are inherent in that particular measure of damage. See, e.g., Vance v. My
Apartment Steak House, 677 S.W.2d 480, 482 (Tex. 1984); Xonu Intercontinental Indus. v. Stauffer Chem. Co., 587
S.W.2d 757, 759-60 (Tex. Civ. App.--Corpus Christi 1979, no writ).

 To recover for lost profits, sufficient evidence must be presented to enable the jury to determine the net amount of profit
with reasonable certainty. Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 258 (Tex. App.--Corpus Christi 1987, writ
ref'd n.r.e.); Popkowsi v. Gramza, 671 S.W.2d 915, 918 (Tex. App.--Houston [1st Dist] 1984, no writ). While it is not
necessary for lost profits to be established with certainty, evidence of lost profits must be based upon objective data from
which the loss can bedetermined with a reasonable degree of exactness. Southwest Battery v. Owen, 115 S.W.2d 1097,
1099 (Tex. 1938); Hall, 733 S.W.2d at 258. 

 In Stauffer, a farmer brought suit against a chemical company for damages to his crop. Stauffer, 587 S.W.2d at 757. The
trial court directed a verdict against the farmer because there was no evidence of damages. In affirming the trial court, this
Court held that the proper measure of damages for lost crops is the market value of the crop minus the cost of harvesting
and marketing. Id at 759-60; see alsoInternational Harvester Co. v. Kesey, 507 S.W.2d 195, 197 (Tex. 1974). In Kesey,
the Texas Supreme Court held that the measure of damages for lost crops is the market value of the crops minus expenses
of cultivating and bringing the crop to market. Kesey, 507 S.W.2d at 197. 

 In "good faith" oil and gas trespass cases the courts measure damages by "net profits." Bender v. Brooks, 127 S.W. 168,
171 (Tex. 1910); Hunt v. HNG Oil Co., 791 S.W.2d 191, 193-94 (Tex. App.--Corpus Christi 1990, writ denied). A good
faith trespasser is liable in damages only for the value of the minerals removed less drilling and operating costs. Hunt, 791
S.W.2d at 193-94. Hence, as a general rule, in order to reach a determination of net profits, evidence must be presented
regarding those costs associated with the operation of the enterprise generating the alleged revenues. Net profits are what
remains after a business deducts expenses incurred in carrying on the business from gross receipts.

 Here, Maxvill presented evidence concerning the amount of production from the well that was ultimately drilled by Royal
on the same location as Maxvill's planned well. The testimony concerned the varying prices of oil and gas that were
applicable to the produced hydrocarbons. Thus, there was some evidence of the revenues that would have be obtained
under the Maxvill-Foster lease. Maxvill argues that the record is silent on what "costs" would be incurred in obtaining
production. Maxvill contends that the royalty is some evidence of a "deduction" from revenues sufficient to allow the jury
to find "net profits." We disagree. We find the general rule announced inHunt, Kesey, and Stauffer controlling in the
instant case.

 The Maxvill-Foster lease covers only those hydrocarbons below 9,000 feet. When minerals are "in place" and a physical
severance is necessary to produce them, there must be some evidence of the cost of severance of the minerals to establish
"net profits." To hold otherwise would allow a jury to engage in gross speculation regarding the amount of "net profits." 
See Hall, 733 S.W.2d at 258. Maxvill failed to present any evidence concerning costs of severing the hydrocarbons and
absent evidence of such costs there is no evidence from which the jury could determine "net profits." See Id; 28 Tex. Jur.
3d Damages § 228 (1983). Thus, the trial court properly granted Royal's motion for an instructed verdict. We overrule
point of error one.

 By point of error two, appellant argues that the trial court erred in excluding evidence regarding an alleged "oral
addendum" to the Foster-Maxvill lease. Maxvill made an offer of proof regarding the existence of an option agreement on
an additional eighty-acre tract. The option provided that if Maxvill were to obtain production under the Foster-Maxvill
lease, then it would be entitled to drill an additional well on "the southeast eighty." However, appellant did not present nor
offer any evidence regarding the value of the option or losses sustained as a result of its inability to exercise the option. 
Absent evidence of damages, we find that the trial court's exclusion of the alleged oral addendum irrelevant because it
could not have had a discernable effect on the outcome of the entire case; it was not calculated to cause the rendition of an
improper judgment. Tex. R. App. P. 81(b)(1). We overrule point of error two. We AFFIRM the trial court's judgment.



__________________________

FORTUNATO P. BENAVIDES,

Justice







Opinion ordered published. Tex. R. App. P. 90.

Opinion delivered and

filed this the 29th day of November, 1990.