**Vanessa ARGUELLES, et al., Appellants,**

**v.**

**UT FAMILY MEDICAL CENTER, et al., Appellees.**

**No. 13-94-392-CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 12, 1996.

Rehearing Overruled Jan. 16, 1997.

Craig S. Smith, Smith & Edwards, Donald B. Edwards, Smith & Edwards, Corpus Christi, Dalinda G. Quintana, Law Offices of Ramon Garcia, Edinburg, for appellants.

Stephen P. Dietz, Law Offices of Stephen P. Dietz, McAllen, R. Jo Reser, Jenkens & Gilchrist, San Antonio, Miguel D. Wise, Sweetman & Wise, Harlingen, Neil E. Norquest, Norquest & Brisack, Chris A. Brisack, Norquest & Brisack, McAllen, Brian D. Metcalf, Jenkens & Gilchrist, San Antonio, for appellees.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

Vanessa Arguelles and Stephen Acosta[1] appeal a directed verdict granted to appellees U.T. Family Medical Center and Dr. Jerry Behal in appellants' suit for wrongful death and negligence. We affirm.

## Background

Appellant Vanessa Arguelles sought prenatal care for her pregnancy from doctors at the U.T. Family Medical Center ("the Center") in McAllen, Texas. Her initial examination was on May 22, 1991. On July 2, 1991, Ms. Arguelles reported to the Center complaining of vaginal bleeding. Doctors examined Ms. Arguelles with a sonogram machine. The sonogram revealed a single live fetus (although Ms. Arguelles was in fact pregnant with twins) and a low-lying placen-

1. Although the briefs on appeal list Ashley Ann Acosta and Abigail Mari Acosta as appellants, neither were plaintiffs below and are therefore not properly appellants in this case.

ta. Due to the low-lying placenta and her young age, the doctors considered Ms. Arguelles' pregnancy to be risky. Ms. Arguelles returned to the Center several more times and was attended to by Dr. Behal and several other doctors, including Dr. Allison Garza, and Dr. Oscar Becerra.[2] Dr. Garza performed a second sonogram examination, and again diagnosed Ms. Arguelles as being pregnant with a single fetus.

On July 30, Ms. Arguelles reported to the Center complaining of pain. She was examined by Dr. Behal, who determined that her pain was not a result of labor but rather of physical activity. Ms. Arguelles was sent home. The following morning, Ms. Arguelles delivered a baby at home. She was taken to the hospital where doctors discovered a second fetus, which was delivered at the hospital. Both babies died shortly after birth. Blood tests indicated that Ms. Arguelles was suffering from an infection known as *chorioamnionitis*.

Ms. Arguelles and Mr. Acosta sued the Center, Dr. Behal, Dr. Garza, and Dr. Becerra alleging that the doctors were negligent in failing to diagnose Ms. Arguelles as being pregnant with twins and in treating Ms. Arguelles. Appellants alleged that

> As a result of Defendants' conduct ..., Plaintiffs suffered severe personal injuries and the death of their two (2) baby girls all of which constitutes negligence on the part of each of the herein named Defendants. Plaintiffs have experienced physical pain and mental anguish and will, in reasonable probability, continue to suffer in the future for their injuries.

Under the portion of their petition titled "Recovery Sought By Plaintiff," appellants alleged that they were entitled to sue for wrongful death under the Texas Wrongful Death Statute and to recover survival damages pursuant to the Civil Practice and Remedies Code.[3] They further alleged that they had suffered pecuniary loss from the deaths of their daughters including loss of care, advice, counsel, and inheritance and that they had lost the "love, affection, emotional support, guidance and happiness [of] their daughters." Appellants also sought recovery for pain and suffering, mental anguish, medical expenses, and funeral expenses for the twins.

Following the presentation of appellants' case in chief to the jury, the appellees moved for a directed verdict, asserting that since Texas does not recognize the "lost chance doctrine," appellants' cause of action was barred. Appellees also asserted several other grounds for the directed verdict, including a lack of evidence of the appropriate standard of care, negligence, and proximate cause. The trial court granted the directed verdict on the ground that the absence of the lost chance doctrine in Texas barred the claim. The trial court later entered a general judgment reflecting the directed verdict, declining to specify the ground on which the directed verdict was granted.

### Arguments on Appeal

By their second point of error, appellants claim that the trial court erred in granting the directed verdict on their wrongful death and survival claims. Appellants argue that the twins' claims for pre-natal injuries accrued when they were born alive. *Leal v. C.C. Pitts Sand & Gravel, Inc.,* 419 S.W.2d 820, 822 (Tex.1967). They also assert that Texas law regarding the "lost chance doctrine" does not bar their claims because there is legally sufficient evidence that, but for appellees' negligent treatment, the twins would have lived.

In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Qantel Business Sys. v. Custom Controls,* 761 S.W.2d 302, 303–04 (Tex.1988); *Maxvill–Glasco Drilling Co., Inc. v. Royal Oil & Gas Corp.,* 800 S.W.2d 384, 386 (Tex.App.—Corpus Christi 1990, writ denied). If we determine that there is any evidence of probative value which raises

2. Doctors and Garza and Becerra were originally named as defendants along with Dr. Behal and the Center, but were non-suited at the close of plaintiffs' evidence at trial.

3. Tex.Civ.Prac. & Rem.Code Ann. §§ 71.002, 71.004, 71.021 (Vernon 1986).

a material fact issue, then the judgment must be reversed and remanded for the jury's determination of that issue. *Qantel,* 761 S.W.2d at 303–04; *Maxvill–Glasco,* 800 S.W.2d at 386. A directed verdict under Tex.R.Civ.P. 268 is proper only under limited circumstances, e.g.: where 1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment, or 2) the evidence proves conclusively the truth of fact propositions which, under the substantive law, establishes the right of the movant, or negates the right of his opponent to judgment; or 3) the evidence is insufficient to raise an issue of fact as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Texas Employers Ins. Ass'n v. Duree,* 798 S.W.2d 406, 408 (Tex.App.—Fort Worth 1990, writ denied); *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 932 (Tex. App.—San Antonio 1989, writ denied); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

Texas does not recognize the "lost chance doctrine," which provides for suit against a negligent treating physician even if the patient was likely to die anyway. In Texas, therefore, if a person is going to die anyway, no cause of action for medical malpractice can be maintained against a treating physician. *Kramer v. Lewisville Mem. Hosp.,* 858 S.W.2d 397, 400 (Tex.1993). This is true whether the plaintiff brings suit pursuant to the Wrongful Death and Survival statutes or as a common law negligence claim. *Id.* at 404, 407.

Dr. Ralph Epstein, the plaintiff's expert witness, testified that the ultrasound examinations that were performed on Ms. Arguelles should have led to the diagnosis of twins, but did not. Dr. Epstein testified that, had the proper diagnosis been made, it would have "heightened the index of suspicion that premature labor could and would occur." Dr. Epstein concluded that "[h]ad the proper diagnosis of twins been made initially, I think it's reasonably certain that the pregnancy could have been prolonged to the point where these twins would have had a 50/50 chance of survival." However, Dr. Epstein also testified that if Ms. Arguelles was in fact suffering from chorioamnionitis, the proper course of treatment would have been for doctors to immediately terminate her pregnancy, and that attempting to prolong a pregnancy when the mother suffers from chorioamnionitis could greatly endanger the mother's life.

To prevail in a negligence action a plaintiff must present evidence of a reasonable probability that the injuries were proximately caused by the negligence of the defendants. *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex.1995); *Kramer,* 858 S.W.2d at 400. The Texas Supreme Court has interpreted this requirement to mean that the ultimate standard of proof on the issue of causation "is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Park Place Hosp.,* 909 S.W.2d at 511 (quoting *Kramer,* 858 S.W.2d at 400). Accordingly, "recovery is barred when the defendants' negligence deprived the patient of only a fifty percent or less chance of survival." *Park Place Hosp.,* 909 S.W.2d at 511.

In the present case, the appellants' expert witness could only be reasonably certain that, had the sonograms been properly interpreted to reveal twins, a different course of treatment would have been followed, with the result that the twins would have had a fifty percent chance of survival. This is no evidence that the negligence of the defendants more probably than not caused the death of the children. Appellants have failed to present any evidence that the twins would have survived but for appellees' malpractice. Appellants' second point of error is overruled.

By their first point of error, appellants argue that, even if there is no cause of action for the deaths of the prematurely born children, Ms. Arguelles has a cause of action in her own right for injuries she sustained as a result of medical malpractice performed on her by the appellees, and that Mr. Acosta has

derivative claims based on those same injuries.

Appellees respond that Ms. Arguelles and Mr. Acosta failed to sue for personal injury separate from the deaths of the twins, and that even if they did bring such claims, they abandoned them by failing to present any evidence of personal injury at trial.

We read appellants' pleadings as including claims for personal injury as well as for the deaths of the twins. However, we agree with appellees that no competent evidence of personal injury apart from the miscarriage was adduced at trial. Appellants did not put on any evidence that Ms. Arguelles herself suffered any personal injury as a result of the appellees' treatment of her. Ms. Arguelles testified that she suffered bleeding, nausea, and pain during her pregnancy, but there was no testimony that she would not have suffered these symptoms if appellees had properly determined that she was carrying twins rather than a single fetus. Additionally, these symptoms appear to have disappeared at the same time the pregnancy terminated. Ms. Arguelles acknowledged at trial that she was offered psychological counseling following her miscarriage, but that she declined the counseling. Ms. Arguelles was not rendered incapable of having children and, in fact, is now a mother.

When a plaintiff fails to present any evidence on an essential element of his claim, this court must affirm the trial court's decision to grant a directed verdict. *See Maxvill-Glasco,* 800 S.W.2d at 387. After reviewing the record, we agree with appellees that appellants have failed to bring forth evidence of personal injury to Ms. Arguelles sufficient to support a claim for medical malpractice apart from the deaths of her children. We overrule appellants' first point of error.

The judgment of the trial court is AFFIRMED.