**EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. ONE, Appellant,**

v.

**Jose P. GRIJALVA, Appellee.**

No. 08–89–00159–CV.

Court of Appeals of Texas, El Paso.

Jan. 3, 1990.

Rehearing Overruled Feb. 7, 1990.

Kurt Paxson, Grambling & Mounce, Steven L. Hughes, Grambling & Mounce, El Paso, Tex., for appellant.

Richard C. White, El Paso, Tex., for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

FULLER, Justice.

The jury determined that the Appellant, El Paso County Water Improvement District No. One, had unreasonably delayed delivery of water to a farmer, Appellee, Jose P. Grijalva, causing $14,535.19 damage to his alfalfa crop. We reverse.

Appellee Grijalva was the owner of some seventy acres of land which he had decided to plant in alfalfa. He was eighty-one years old at the time of the trial and had owned and lived on the land for over forty-five years. He worked the land himself by periodically rotating his crops from cotton to alfalfa.

The El Paso County Water Improvement District No. One (Water District) was created under state law. Before 1980, the Water District was primarily a taxing entity whereby taxes were paid by the members of the District and the proceeds were turned over to the United States Bureau of Reclamation which operated and maintained the irrigation ditches and canals for delivery of water to the members of the Water District. In 1980, the Water District entered into a contract with the Federal Government to take over those responsibilities of the operations and maintenance by the Bureau of Reclamation.

The evidence at trial indicated that the water supply initiated in the mountains of Southern Colorado from snow falling on the Rocky Mountains. When the snow melts, the water enters the Rio Grande River flowing into the State of New Mexico. It picks up effluent from the cities of Albuquerque and Santa Fe on the way into Elephant Butte Dam where the water is stored. The water is then released to generate electricity and is recaptured in Caballo Reservoir. Thereafter, when it is released, the water picks up effluent from New Mexico cities of T or C, Hatch, Las Cruces and Anthony. As the water flows down the Rio Grande, the city of El Paso then discharges effluent into the river. As all water and effluent hit the Rio Grande River, it then becomes part of the Water District and must be distributed or it becomes lost. The Bureau of Reclamation allocates to the Water District on a yearly basis the amount of acre of feet of water that will be available and then the Water District in turn makes allotment of the available water to the land owners that are members of the Water District. There is evidence in the record that there were 10,000 members of the Water District of which Appellee Grijalva was a member. To be entitled to water, the members must pay "water right taxes" which are due after the year the water is taken, and water cannot be distributed when ordered by the landowner if the taxes are delinquent.

On February 27, 1981, the Appellee, Jose P. Grijalva, called in his order for water but it was not delivered because his 1980 irrigation (water right) taxes for 1980 had not been paid. On March 2, 1981, the Appellee went into Appellant's office and tendered his check for payment of the delinquent taxes. He had already planted his

alfalfa seeds. Once the order for water is called into the Water District, a due date is set by the District for delivery. The Water District contended that the Appellee failed to place a new order for water when he tendered his tax check on March 2, 1981, and contended there was not a new order for water placed until March 14, 1981. Appellee contended that he did request water on March 3, 1981, but that the delivery did not take place until March 17, which was too late. This resulted in the loss of his alfalfa crop. His suit against Appellant was on a breach of contract theory claiming damages in the amount of $14,535.19 for the reasonable value of the crop lost.

The jury found that (1) the Water District unreasonably delayed delivery of water to Grijalva after he paid his taxes in 1981; (2) such delay was a proximate cause of damage to Grijalva's 1981 crop; (3) as a result of the delay of delivery of water that damaged Grijalva's crop, Grijalva was entitled to $14,500.00. The trial court entered judgment pursuant to the jury verdict and, in addition, awarded prejudgment interest in the amount of $13,727.99.

Appellee has raised twelve points of error challenging the proceedings from motions ruled on to the verdict of the jury. Legal and factual insufficiency challenges to the jury's findings are made as well as the complaint of the award of prejudgment interest.

■ In viewing the no evidence or legal insufficiency challenges, this Court must examine only that evidence and reasonable inferences therefrom, which support the verdict when they are viewed in the most favorable light. If the favorable evidence amounts to more than a mere scintilla, which is more than a basis for suspicion, then the legal sufficiency challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61 (Tex.1983).

■ In reviewing the factual insufficiency challenge, this Court must review all of the evidence and the resulting inferences therefrom, and the challenge should be sustained only if the verdict is so contrary to the overwhelming weight of the evidence

as to be clearly unjust and wrong. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986). We must not substitute our judgment for that of the finder of facts in the lower court, especially when evaluating the credibility of the testifying witnesses. *Clancy v. Zale Corporation*, 705 S.W.2d 820 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Points of Error Nos. One, Two and Three assert error insofar as the submission and answer to Special Issue No. Eight which was:

> Find from a preponderance of the evidence, what sum of money, if any, paid in cash now will reasonably compensate Plaintiff for damage, if any, done to his crops in 1981 as a result of delay, if any, in delivery of water?

The jury answered: $14,500.00.

Appellee testified as to the amount he was damaged in 1981. He stated that the amount he lost in terms of expectation of crops, by not receiving the water on time, was approximately $14,500.00. The general rule in Texas for determining damages due to crop loss is " 'the market value of the lost portion of his crop, as measured at maturity of the crop, less the cost he would have had in harvesting and marketing the lost portion.' " *International Harvester Company v. Kesey*, 507 S.W.2d 195 (Tex. 1974).

■ Determining the amount of damages to a growing crop requires a sound estimate of the amount the crop would have produced if it had remained uninjured while cultivated minus expenses. The outcome is merely an estimate, thus a great deal of liberality in making the proof is to be allowed. *Schultz v. Harless*, 271 S.W.2d 696 (Tex.Civ.App.—El Paso 1954, no writ).

Appellee was required to prove the factual data which supported his claim for lost profits due to crop loss. *International Harvester Company v. Kesey*, 507 S.W.2d 195.

■ Evidence tending to support the jury's finding of the damages for crop loss was offered by Appellee's own testimony

that not even five percent of the alfalfa seeds gave any sign of germanating. He testified that he paid about $2,300.00 for the alfalfa seeds that were planted but failed to come up. In crop loss cases, a jury is entitled to consider: (1) the probable yield of the crop under proper cultivation, (2) the amount spent on the crop before it was destroyed, (3) the amount it would have cost to harvest and market the crop, and (4) the value of the yield when it has matured and is ready for sale. *Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088 (5th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 513, 70 L.Ed.2d 385 (1981).

▇ Appellee failed to offer evidence concerning the damage suffered other than to testify as to the the cost of the alfalfa seeds, the percentage of the seeds that sprouted and the conclusory statement that he was damaged approximately $14,500.00. It was Appellee's burden to prove his damages, and we do find that there was some evidence offered to support the submission of the damage issue to the jury. However, when all the evidence is weighed, we find there is insufficient evidence to support the jury's finding.

We overrule Points of Error Nos. One and Two and a portion of Point of Error No. Three which asserts a no evidence challenge.

We sustain Point of Error No. Three, finding that there was insufficient evidence to support the jury's answer to Question No. Eight.

Appellant's Points of Error Nos. Four, Five and Six assert error of the trial court in rendering judgment for Appellee because his claim was barred by doctrine of governmental immunity.

▇ If Appellee was contending that he had asserted a tort action, the Appellant would be correct in his contention that the doctrine of governmental immunity would be applicable because of the failure of Appellee to bring his claim within the Texas Tort Claims Act. However, the Appellee's success or failure to obtain a recovery against the Water District was based on contract.

Points of Error Nos. Four, Five and Six are overruled.

Points of Error Nos. Seven and Eight assert the trial court erred in submitting Question No. One to the jury and in entering judgment based on the jury's answer because there was no evidence to support the submission or the answer to Question No. One.

Point of Error No. Nine asserts there was no evidence and/or insufficient evidence to support the jury's answer to Question No. One.

Point of Error No. Ten asserts the trial court erred in submitting Question No. One because it assumed a disputed fact and constituted a comment on the weight of the evidence.

Question No. One as submitted stated: Did Defendant unreasonably delay delivery of water to Plaintiff after he paid his taxes in 1981?
Answer: Yes.

Appellee and Appellant entered into an oral contract for the delivery of water. No factual disagreement exists that a farmer who was a part of the Water District would call in his request for water; then the Water District would check to see if the farmer had paid his taxes and assessment; and if the taxes were current, the water would then be delivered. If the taxes were delinquent, no water would be delivered. The delivery time for the water to reach the farmer's land would be from four to seven days from the time it was ordered.

▇ The trial judge must decide whether the facts in evidence give rise to a contract. A contract arose as a matter of law because Appellee was properly a member of the Water District and was entitled to water upon the payment of his "water tax" and the ordering of his water. The Water District was obligated to furnish Appellee water when properly requested conditioned only that Appellee not be delinquent in his taxes.

It cannot be seriously argued that the purpose of the formation and operation of the El Paso Water Improvement District No. One was not for the benefit of those

landowners such as the Appellee, Jose P. Grijalva. In fact, the contract between the El Paso Water Improvement District and the Bureau of Reclamation was for the benefit of such farmers as the Appellee. The Tex.Water Code Ann. sec. 55.126 (Vernon 1972) not only provides that a water district may sue but it may also be sued. Over the years, such suits have been successfully filed for failure to deliver water under a breach of contract theory. *Cameron County Water Improvement District No. 1 v. Daniels*, 269 S.W. 1066 (Tex.Civ. App.—San Antonio 1925, no writ); *Bildon Farms, Inc. v. Ward County Water Improvement District No. 2*, 415 S.W.2d 890 (Tex.1967).

Question No. One as submitted to the jury may have been a broad submission but it was certainly permissible. Tex.R. Civ.P. 277. The jury could have decided that Appellee called for water delivery on March 3 even though the dispatcher did not make a record of the call. Even if the jury believed that no phone call request was made, they were still entitled to believe that Appellant was wrong in making Appellee renew his request for water after his check cleared. Alternatively, knowing the urgency for water and knowing the check had cleared, the jury could find that the delay from Appellee's last request for water on March 14 to the delivery of the water to Appellee's farm on March 17 was unreasonable. We find no error in the submission of Question No. One.

Points of Error Nos. Seven, Eight, Nine and Ten are overruled.

Point of Error No. Eleven asserts the trial court erred in not submitting Appellant's requested instruction on mitigation of damages.

Appellant incorrectly states that the trial judge "duly marked refused" on his requested instruction on mitigation of damages. The record before us does not support that assertion. Regardless, we must return the case to the trial court on the insufficiency of the evidence as to the damages as found by the jury, and such complaint, we assume, will be rectified in the event of retrial.

Point of Error No. Twelve asserts the trial court erred in awarding Appellee prejudgment interest.

A party must specifically plead for prejudgment interest in order to receive it. *Benavidez v. Isles Construction Company*, 726 S.W.2d 23 (Tex.1987). In order to recover for prejudgment interest, the word "interest" must be specifically stated in the prayer for relief. The Appellee only prayed for such other and further relief which he was entitled to. This was too general to support the award of prejudgment interest. *DeSoto v. Matthews*, 714 S.W.2d 133 Tex.App.—Houston [1st Dist.] ), writ ref'd n.r.e., 721 S.W.2d 286 (Tex.1986).

As a general rule to obtain prejudgment interest, the plaintiffs must affirmatively plead for it if sought as part of the damage element. However, contractual interest may be predicated on a prayer for general relief, but the contract must be in writing. *Benavidez v. Isles Construction Company*, 726 S.W.2d 23. The incident giving rise to this lawsuit involves an oral contract, and Appellee failed to specifically pray that prejudgment interest be awarded. Therefore, he was not entitled to a judgment awarding it.

Point of Error No. Twelve is sustained.

The judgment of the trial court is reversed and the case is remanded to that court for a new trial.