ENGELMAN IRRIGATION DISTRICT, Appellant,

v.

SHIELDS BROTHERS, INC., Appellee.

No. 13–95–306–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 18, 1997.

Rehearing Overruled Feb. 5, 1998.

---

R. Glenn Jarvis, Jarvis & Kittleman, McAllen, amicus curiae.

J. Arnold Aguilar, Law Office of J. Arnold Aguilar, Brownsville, for appellant.

David E. Wood, Garcia & Lopez, Edinburg, for appellee.

1. Rule 3 of the Engelman Irrigation District's Rules & Regulations provides, in relevant part, as follows:

 The District will deliver water on application made under the conditions above specified, within a *reasonable time after receipt of application consistent with the economical delivery of water.* (emphasis added).

2. Rule 7 of the Engelman Irrigation District's Rules & Regulations provides, in relevant part, as follows:

Before FEDERICO G. HINOJOSA, Jr., YANEZ and RODRIGUEZ, JJ.

## OPINION ON MOTION FOR REHEARING

FEDERICO G. HINOJOSA, Jr., Justice.

After we issued our original opinion in this case, appellee, Shields Brothers, Inc., filed a motion for rehearing. We grant Shields Brothers' motion for rehearing, withdraw our original opinion, and substitute the following as the opinion of the Court.

Shields Brothers sued appellant, Engelman Irrigation District, for breach of contract for failing to deliver water. Shields Brothers alleged that it suffered extensive losses to its cotton, grain, and watermelon crops because it did not get irrigation water in a timely manner. Shields Brothers claimed that the Irrigation District did not comply with its own rules and regulations, specifically rules 3 [1] and 7.[2] After a jury trial, the trial court entered a judgment against the Irrigation District for actual damages, pre-judgment interest, and attorney's fees. The Irrigation District brings ten points of error. We affirm.

The jury found the parties had agreed (1) the Irrigation District would deliver water to Shields Brothers within a reasonable time, (2) Shields Brothers satisfied its obligations under the agreement, and (3) the District breached the agreement.

By its first point of error, the Irrigation District complains that the trial court erred in rendering judgment for Shields Brothers because the District is entitled to sovereign immunity.

Priority rights to water from applications on file shall be determined on a *first come first serve bases* (sic), however, an applicant may not use an outlet or distribution line for more than a period of seven days at any one time should during this seven day period an application be filed by another applicant for water from the same outlet or distribution line. In such case, [an] applicant using water must relinquish his right to the water to second applicant. If, however, no other applications have been filed, applicant using water is entitled to water for another seven day period. (emphasis added).

The Irrigation District derives its authority and purpose from Article XVI of the Texas Constitution and as such, is a governmental agency of the State. TEX. CONST. art. XVI, § 59(a), (b). The Irrigation District contends that because Shields Brothers did not obtain consent from the State to sue the District, the District is immune from this suit. The Irrigation District also argues that the trial court did not have subject matter jurisdiction over Shields Brothers' complaint because it did not plead and prove the State's consent.

■■■ Shields Brothers cites us to section 58.098 of the Texas Water Code which provides that an irrigation district may sue and be sued in the courts of this state. TEX. WATER CODE ANN. § 58.098 (Vernon 1988);[3] *see Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex. 1970) (presenting the contention of consent for the first time during oral argument before the supreme court). By enacting section 58.098, the Legislature provided clear and unambiguous consent for the Irrigation District to be sued. *See Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980); *City of Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894, 906 (Tex.App.—Corpus Christi 1987, writ denied). Moreover, because the statute authorizes lawsuits against the Irrigation District, it was not necessary for Shields Brothers to allege and prove the statute. *See Brownsville Navigation Dist.*, 453 S.W.2d at 814. The Irrigation District's first point of error is overruled.

■■ By its fourth point of error, the Irrigation District complains that the trial court erred in rendering judgment against it because there is no evidence, or insufficient evidence, of an agreement between the parties for delivery of water within a reasonable time.[4] After reviewing the facts and circumstances of this case, we disagree.

■■■ When we review a "no evidence" or legal sufficiency of the evidence point, we consider only the evidence and reasonable inferences that tend to support the jury's finding, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). A legal sufficiency point must and may only be sustained when the record discloses: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; and 4) the evidence established conclusively the opposite of the vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is not more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con–Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). The test for the application of this no evidence/scintilla rule is: if reasonable minds cannot differ from the conclusion, then the evidence offered to support the existence of a vital fact lacks probative force, and it will be held to be the legal equivalent of no evidence. *Id.*

■■■ When we review an "insufficient evidence" or factual sufficiency of the evidence point, we consider, weigh, and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We review the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Corpus Christi Teachers Credit Union v. Hernandez*,

---

3. Because the events in this case occurred in 1990 and 1991, all references to the water code will be to the statutes in existence at that time.

4. The Irrigation District's fourth point of error also complains of the sufficiency of the evidence to support the jury's finding of an agreement to deliver water at a specific place and time, or under agreed terms. Because the jury made no such findings, we decline to address that portion of the point of error.

814 S.W.2d 195, 197 (Tex.App.—San Antonio 1991, no writ). We then set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

The question of whether a contract is ambiguous is one of law for the court. *Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Resources, Inc.,* 939 S.W.2d at 121; *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

When a contract contains an ambiguity, its interpretation becomes a question of fact for the jury. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex. 1987); *Pitman v. Lightfoot,* 937 S.W.2d 496, 517 (Tex.App.—San Antonio 1996, writ denied). Whether parties intended to make an agreement is an issue of fact to be drawn from the facts and circumstances of the case. *Scott v. Ingle Bros. Pac., Inc.,* 489 S.W.2d 554, 556–57 (Tex.1972); *Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 156 (Tex.App.— Texarkana 1988, writ denied).

Generally, where no time for performance is stated, it will be presumed that the agreement is to be performed within a reasonable time. *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Fitzsimmons v. Anthony,* 716 S.W.2d 719, 720 (Tex.App.—Corpus Christi 1986, no writ); *Joines v. Burke,* 540 S.W.2d 798, 801 (Tex. Civ.App.—Corpus Christi 1976, no writ). What is a reasonable time should be determined from the facts and circumstances of the case. *Wade Contractors, Inc. v. C.W. & A., Inc.,* 589 S.W.2d 505, 507 (Tex.Civ.App.— Corpus Christi 1979, writ ref'd n.r.e.).

The record reflects that in 1990 and 1991, Shields Brothers was a farming enterprise with fields located within the Irrigation District, and Shields Brothers relied on water from the District to irrigate those fields. The Irrigation District received most of its water from the Donna Irrigation District, and any water the Irrigation District could provide to Shields Brothers came from that source. In order to obtain water from the Irrigation District, Shields Brothers had to apply [5] for water, pay an assessment, and arrange for delivery of the water. According to the water ticket, acceptance of the application was subject to the applicant's compliance with the Irrigation District's rules and regulations.

Aaron Shields, one of appellee's owners, testified that even though Shields Brothers complied with the Irrigation District's rules and regulations during 1990 and 1991, the District failed to deliver water in a timely manner or in accordance with its rules and regulations. Shields testified that he considered the water ticket, together with the Irrigation District's rules and regulations, to be a contract between Shields Brothers and the District. Shields claimed that the Irrigation District breached the contract when it violated rules 3 and 7. Shields testified that other Irrigation District users applied for water after Shields Brothers, but that those users received their water first, in direct violation of rule 7. Shields contended that by delivering water to the other users out of order, the Irrigation District breached the contract.

The water tickets specify the date of application, the acreage to be irrigated, the location for delivery, the crop to be irrigated, and the amount paid for the water. Although no specific time for delivery was stated on the application, the Irrigation District's rules and regulations required that it deliver water on a "first come, first serve" basis, within a reasonable time from the application, and in a manner consistent with economical delivery.

We conclude that the water tickets and the Irrigation District's rules and regulations, taken together, are more than a scintilla of evidence of an agreement. Accordingly, we hold that the evidence is legally sufficient to support the jury's finding of an agreement to deliver water within a reasonable time.

---

5. The application is called a "water ticket."

The jury heard contradictory evidence concerning the meaning of the phrase "on a first come, first serve basis." The jury also heard testimony concerning (1) how the Irrigation District interpreted rules 3 and 7 and (2) how it delivered water in an economical manner. Evidence was also presented concerning the dry conditions that existed in 1990 and 1991. The jury heard evidence that water was available to the Irrigation District during those years, that sometimes the District did not deliver any water to Shields Brothers, and that at other times the District would start delivering water when it was too late to save crops or would stop before delivering all of the water. The jury also heard evidence that Shields Brothers did not always comply with the District's requirements that men be in the field ready to accept water when the District delivered it and that irrigation ditches be properly maintained.

We are aware that the El Paso Court of Appeals has previously held that a contract is formed between an applicant and a water district when the applicant is a member of the district, applies for water, and pays the assessment. *El Paso County Water Improvement Dist. No. 1 v. Grijalva*, 783 S.W.2d 736, 739 (Tex.App.—El Paso 1990), *writ denied per curiam*, 795 S.W.2d 705 (Tex.1990). We are also aware, that in denying the El Paso County Water Improvement District's application for writ of error, the Texas Supreme Court stated:

> In denying the Water District's application for writ of error, a majority of this court declines to express an opinion on and should not be read to approve that portion of the court of appeals' opinion which states:
>
> > A contract arose as a matter of law because Appellee was properly a member of the Water District and was entitled to water upon the payment of his "water tax" and the ordering of his water.

*El Paso County Water Improvement Dist. No. 1 v. Grijalva*, 795 S.W.2d 705, 706 (Tex. 1990).

■ However, we believe that the instant case is distinguishable. In this case, the Engelman Irrigation District enacted rules and regulations binding itself to deliver water within a reasonable time, on a "first come, first serve" basis, consistent with good economics. We hold that by enacting these rules and regulations, the Irrigation District willingly bound itself to deliver water beyond the statutory requirements of chapter 58 of the water code.

After reviewing all the evidence, we conclude that the evidence is not too weak to support the jury's finding of an agreement to deliver water within a reasonable time and that the finding is not so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. Accordingly, we hold that the evidence is factually sufficient to support the jury's finding of an agreement to deliver water within a reasonable time. Accordingly, we overrule the Irrigation District's fourth point of error.

By its fifth point of error, the Irrigation District complains that the trial court erred in rendering a judgment against it because there is no evidence, or insufficient evidence, of any damages resulting from any breach of any specific contract. Under this point of error, the Irrigation District also contends that there is no evidence, or insufficient evidence, of the amount of damages.

■ After reviewing the record, we find that the Irrigation District did not challenge the factual sufficiency of the evidence on damages in its motion for new trial. Accordingly, that issue is not preserved for appellate review. TEX.R. CIV. P. 324(b)(1).

■ The standard of review for the legal sufficiency of the evidence is set forth above. Generally, in order to recover any type of damages, a plaintiff must produce evidence from which the jury may reasonably infer that the damages sued for have resulted from the conduct of the defendant. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex.1995); *Houston Mercantile Exch. Corp. v. Dailey Petroleum Corp.*, 930 S.W.2d 242, 248 (Tex.App.—Houston [14th Dist.] 1996, no writ). This requirement is satisfied when the jury is presented with pleadings and proof establishing a direct causal link between the damages awarded, the actions of the defendant, and the injury

suffered. *Haynes & Boone*, 896 S.W.2d at 181; *Houston Mercantile Exch. Corp.*, 930 S.W.2d at 248.

▉▉▉ The jury was instructed to consider only lost profits suffered by Shields Brothers for watermelon, grain, and cotton crops in 1990 and 1991 as a result of the Irrigation District's failure to comply with the agreement. Lost profits are the natural and probable consequences of the wrongful conduct. *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098–99 (1938). Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). However, the injured party must do more than show that they suffered some lost profits. *Id.* The amount of loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Id.* At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained. *Id.*

▉▉▉ The measure of damages for lost crops is the market value of the crops, less the expenses of cultivating and bringing the crops to market. *International Harvester Co. v. Kesey*, 507 S.W.2d 195, 197 (Tex.1974); *Xonu Intercontinental Indus. v. Stauffer Chem. Co.*, 587 S.W.2d 757, 759 (Tex.Civ. App.—Corpus Christi 1979, no writ). In crop loss cases, a jury is entitled to consider: 1) the probable yield of the crop under proper cultivation; 2) the value of the yield when it has matured and is ready for sale; and 3) the expense of maturing, preparing, and placing the crop. *International & G.N.R. Co. v. Pape*, 73 Tex. 501, 11 S.W. 526, 527 (1889); *Xonu Intercontinental*, 587 S.W.2d at 759; *see also Grijalva*, 783 S.W.2d at 739 (citing *Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088 (5th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 513, 70 L.Ed.2d 385 (1981)). Generally, the difference between the value of the probable crop in the market and the expenses associated with the crop will give the value of the growing crop with reasonable certainty. *International & G.N.R. Co.*, 11 S.W. at 527.

The water tickets establish the acreage to be watered, the crops planted on that acreage, and the dates of order and delivery. The evidence shows that although water was available, it was most often delivered late, incompletely, or not at all.

▉▉▉ John M. Patrick, professor of Economics with the Department of Agronomy and Finance at Texas A & M International University, testified concerning the damages suffered by Shields Brothers. Patrick testified that he reviewed (1) Shields Brothers' farm records for 1990 and 1991, (2) Shields Brothers' income tax returns for 1990 and 1991, (3) a report from Esper K. Chandler, a certified professional agronomist from Texas Plant & Soil Lab, Inc., and (4) a report from Texas A & M Enterprise Budgets concerning the expected yield, costs, and revenues. He also reviewed cotton crop yields from fields adjacent to those farmed by Shields Brothers.

Patrick testified that the expected yield of watermelons in 1990 (the only year applicable) was 15,000 pounds per acre, the market price per pound was $0.06, and expenses were $282.52 per acre. He also testified that in 1990 and 1991, grain was expected to yield 6000 pounds per acre and expenses were $122.32 per acre. The market value of grain in 1990 was $4.50 per 100 pounds, and in 1991 it was $4.30 per 100 pounds. He further testified that cotton crops were expected to yield 1000 pounds per acre in 1990 and 1991. In 1990, the cotton crop had a market value of $0.69 per pound and expenses were $318.16 per acre. In 1991, the cotton crop had a market value of $0.75 per pound and expenses were $301.34.

The water tickets show when Shields Brothers requested water and when it was delivered by the Irrigation District. For instance, the 1990 water tickets show that Shields Brothers' grain fields were watered within a reasonable time after an order was placed. After reviewing the water tickets, the jury could properly determine that any lost grain crops in 1990 were not the result of an untimely irrigation. By considering Patrick's testimony and reviewing the water

tickets, the jury could also calculate damages for crops not receiving water within a reasonable time.

We conclude that Patrick's testimony, in conjunction with the water tickets, is more than a scintilla of evidence to support the jury's finding of damages. Accordingly, we hold that the evidence is legally sufficient to support the jury's finding of damages. We overrule the Irrigation District's fifth point of error.

By its second point of error, the Irrigation District contends that the trial court erred in rendering judgment for Shields Brothers because there was no finding of an agreement to deliver water at a specific place and time, or under agreed terms. By its third point of error, the Irrigation District contends that the trial court erred in rendering judgment for Shields Brothers because there was no finding that the District failed to comply with an agreement to deliver water at a specific place or time, or under agreed terms. The Irrigation District requested special issues on these two points, but they were refused by the trial court.

■ Whether an agreement meets the legal requirements of a contract and its interpretations are questions of law. *Lone Star Steel,* 759 S.W.2d at 157. The trial court must find that the facts in the case give rise to a contract. *See Grijalva,* 783 S.W.2d at 739; *Lone Star Steel,* 759 S.W.2d at 156.

■ It is essential to the validity of a contract that it be sufficiently certain to define the nature and the extent of its obligations. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex. 1966); *Moore,* 179 S.W.2d at 942. Courts are reluctant, however, to hold a contract void for uncertainty. *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699, 701 (1951); *OKC Corp. v. UPG, Inc.,* 798 S.W.2d 300, 305 (Tex.App.—Dallas 1990, writ denied); *Estate of Eberling v. Fair,* 546 S.W.2d 329, 334 (Tex.App.—Dallas 1976, writ ref'd n.r.e.). If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, however, it cannot constitute an enforceable con-

tract. *Bendalin,* 406 S.W.2d at 899; *Moore,* 179 S.W.2d at 942; *Gannon v. Baker,* 830 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred. *Gannon,* 830 S.W.2d at 709; *University Nat'l Bank,* 773 S.W.2d at 710.

■ A binding contract must have an offer and an acceptance, and the offer must be accepted in strict compliance with its terms. The parties must have a meeting of the minds, and each must communicate its consent to the terms of the agreement. *American Nat'l Ins. Co. v. Warnock, 131 Tex.* 457, 114 S.W.2d 1161, 1164 (1938); *Smith v. Renz,* 840 S.W.2d 702, 704 (Tex. App.—Corpus Christi 1992, writ denied). The offer must be clear and definite just as there must be a clear and definite acceptance of all terms contained in the offer. *Gulf Coast Farmers Co-op. v. Valley Co-op Oil Mill,* 572 S.W.2d 726, 737 (Tex.Civ.App.—Corpus Christi 1978, no writ). To form a binding contract, it must appear that the party to whom the offer is made accepts such offer and communicates such acceptance to the person making the offer. *Warnock,* 114 S.W.2d at 1164.

■ Shields Brothers paid the Irrigation District certain sums of money to deliver water. Shields Brothers completed the application which stated (1) the specific amount to be paid to the Irrigation District, (2) the location where the water was to be delivered, (3) the total acreage to be watered by that application, (4) the crops needing the water, (5) the parties involved, and (6) that the application was subject to the District's rules and regulations. Only the time of delivery was not clearly specified on the application. However, the Irrigation District's rules provided that delivery would be made within a reasonable time after the application was made. The Irrigation District accepted the application and payment for the water. Based on this information, the trial court could have believed that agreement on all

terms was definite enough to form a contract, except for the time of performance.

As we discussed under point four, resolution of any ambiguity is a question for the jury. We have found the evidence supports the jury's finding that the parties agreed to the delivery of water within a reasonable time and that the Irrigation District breached that agreement. Therefore, the trial court could have correctly determined, under the facts and circumstances of this case, that a contract existed and that the Irrigation District breached the contract by not delivering water to Shields Brothers within a reasonable time, consistent with the economical delivery of water at the time. We overrule the Irrigation District's second and third points of error.

By its sixth point of error, the Irrigation District complains that the trial court erred in rendering judgment for Shields Brothers because the trial court made no finding that there was a basis for such a recovery. Specifically, the Irrigation District contends that the trial court never determined (1) that a contract existed between the parties, (2) what the terms of the purported contract were, and (3) whether the jury's answers to the special issues were legally sufficient to establish a breach of contract.

The Irrigation District's argument appears to be that the trial court's judgment failed to contain conclusions of law regarding the existence of the contract and a breach. The Irrigation District cites no authority for this argument and, after careful research, we have found none.

As we previously discussed, the only ambiguous contract term was whether the parties agreed that water would be delivered within a reasonable time after application. Once the jury found that such an agreement existed, and that it was breached by the Irrigation District, the trial court could properly reach a legal conclusion that a contract was breached. Having found a legal basis for the trial court's judgment, we overrule the Irrigation District's sixth point of error.

By its seventh point of error, the Irrigation District complains that the trial court erred in rendering judgment against it be-

cause the only evidence establishing the contract terms violated the parol evidence rule. The Irrigation District contends that Aaron Shields' testimony regarding Shields Brothers' expectations for delivery of water violated the parol evidence rule. The Irrigation District argues that the water tickets, as well as the rules and regulations, are unambiguous documents which do not provide that water will be delivered within a reasonable time.

■■■ As we have previously noted, rule 3 of the Irrigation District's rules and regulations provides that "The District will deliver water ... within a reasonable time after receipt of application consistent with the economical delivery of water." Because the water tickets incorporate by reference the Irrigation District's rules and regulations, we hold that any evidence admitted by the trial court concerning the District's rules and regulations is not extrinsic evidence. We overrule the Irrigation District's seventh point of error.

By its eighth point of error, the Irrigation District contends that the trial court erred in rendering judgment against it because the alleged contract violates the statute of frauds.

■■■ A party waives his right to assert the statute of frauds as a defense if he does not plead it. Tex.R. Civ. P. 94; *First Nat'l Bank in Dallas v. Zimmerman*, 442 S.W.2d 674, 677 (Tex.1969). Because the Irrigation District did not plead the statute of frauds, we hold it waived that defense. We overrule the Irrigation District's eighth point of error.

By its ninth point of error, the Irrigation District complains that the trial court erred in excluding from evidence Shields Brothers' Agricultural Stabilization and Conservation Service records. Specifically, the District complains of two exhibits presented in a bill of exceptions. These exhibits contain applications from (1) Aaron Shields for his personal farms for 1990 and 1991 and (2) Shields Brothers for farm crop disaster relief for 1990 and 1991.

When the Irrigation District initially offered these two exhibits into evidence, the trial court ruled that it would only admit into

evidence the applications from Shields Brothers for farm crop disaster relief for 1990 and 1991. The Irrigation District later withdrew Shields Brothers' applications from evidence, and those documents were included in a bill of exceptions. Because the trial court initially concluded that crop disaster applications from Shields Brothers were admissible and that applications for Aaron Shields' personal farms were not, we will analyze the exclusions separately.

■■■■ The decision to admit evidence rests within the discretion of the trial court. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995); *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238, 241–42 (Tex. 1985). A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989); *Downer*, 701 S.W.2d at 242.

### Shields Brothers' Applications

The Irrigation District complains that the trial court excluded from evidence Shields Brothers' applications for farm crop disaster relief for 1990 and 1991. The record reflects that the trial court admitted these applications into evidence, and that the Irrigation District later withdrew them from evidence. We cannot say that the trial court erred by allowing the Irrigation District to withdraw Shields Brothers' applications from evidence.

■■■ Nevertheless, even if the trial court had erred by excluding Shields Brothers' applications from evidence, we would hold that the error is harmless. *See* Tex.R.App. P. 44.1. The Irrigation District contended that Shields Brothers' applications were admissible as statements against interest. *See* Tex.R. Civ. Evid. 803(24). Had there been anything in the applications which could be construed against Shields Brothers' interest we might agree. However, the applications actually support Shields Brothers' cause of

action. The applications state that the conditions affecting Shields Brothers' crops were excessive heat and lack of water.

### Aaron Shields' Applications

During the bill of exceptions, Aaron Shields testified that of his personal farm property, only several small farms were actually located within the Irrigation District. Shields was unable to determine from the applications which applied to those few farms. He also testified that some of his personal farms contained dry land crops where irrigation was not needed. However, Shields testified that he was not seeking damages from the Irrigation District for crops lost on his personal farms.

■■■ We hold that the trial court properly excluded the applications for farm crop disaster relief pertaining to the personal farms of Aaron Shields because those applications were not relevant to losses sustained by Shields Brothers. The Irrigation District's ninth point of error is overruled.

By its tenth point of error, the Irrigation District complains that the trial court erred in excluding evidence of Aaron Shields' prior criminal conviction for possession with intent to distribute twenty pounds of marihuana and of the resulting forfeiture of approximately $37,000.

Through this evidence, the Irrigation District intended to impugn Aaron Shields' credibility concerning his testimony that a bank loan was denied to Shields Brothers because previous loans were unpaid. The Irrigation District believed the reason for the bank's decision to deny the loan was based on Aaron Shields' conviction. In addition, the Irrigation District sought to establish that, without the forfeiture, Shields Brothers would have had more money to spend on farm supplies that might have enhanced crop yields. Evidence reflecting the conviction and the forfeiture is included in the record as a bill of exceptions.

■■■ Convictions for crimes involving felony or moral turpitude are admissible in civil cases for impeachment purposes. Tex.R. Civ. Evid. 609. The trial judge has

discretion to decide whether to admit the witness's prior convictions for impeachment purposes. *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970); *Borden, Inc. v. Rios,* 850 S.W.2d 821, 833–34 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.); *Harris County, Texas v. Jenkins,* 678 S.W.2d 639, 641 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Before admitting the conviction into evidence, the trial court must determine that the probative value of the evidence outweighs the prejudicial effect to the party the evidence is offered against. TEX.R. CIV. EVID. 609(a). The complaining party must demonstrate that the trial court abused its discretion by refusing evidence of the witness's conviction. *Borden, Inc.,* 850 S.W.2d at 833–34.

After reviewing the entire record, we conclude the trial court did not err by excluding evidence of the conviction or the forfeiture. The Irrigation District sought to introduce the conviction evidence to show that the bank had denied a farm loan to Shields Brothers because of Aaron Shields' conviction. However, during the bill of exceptions, Aaron Shields testified that although the bank refused to give Shields Brothers a farm loan in 1992, the bank did give him a personal loan for the same purposes. Shields also testified that he believed the bank knew of his conviction. Thus, it would appear that the bank's reason for denying Shields Brothers the loan had nothing to do with Shields' conviction. Moreover, a denied bank loan has little, if any, relevance to the issue in the case—whether a contract was breached for the delivery of irrigation water—since Shields Brothers could not recover damages for the denied loan under a lost profits theory.

We also fail to see how the evidence of a forfeiture is relevant to whether water was delivered within a reasonable time. Even if Shields Brothers had been able to apply Aaron Shields' forfeited $37,000.00 toward additional farm supplies, the evidence reflected by the water tickets—that delivery of water in many instances occurred more than twenty days after the date of application—would not change. Extra supplies would be useless if the crops did not get any water. More-over, the Irrigation District has failed to show that the outcome of the trial would have been different if this evidence had been admitted.

We hold that the probative value of Aaron Shields' conviction and subsequent forfeiture of $37,000.00 was substantially outweighed by the prejudicial effect of such evidence. Accordingly, we overrule the Irrigation District's tenth point of error.

We affirm the judgment of the trial court.