

NUMBER 13-14-00070-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ENGELMAN IRRIGATION DISTRICT,                                      **Appellant,**

**v.**

SHIELDS BROTHERS, INC.,                                              **Appellee.**

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Garza

In this case, we are asked to determine whether a 2006 change in the Texas Supreme Court's jurisprudence on governmental immunity renders a 1995 judgment void. Appellant Engelman Irrigation District ("EID") argues that it does and that the trial court therefore erred by denying its motion for summary judgment in a suit filed against appellee Shields Brothers, Inc. ("Shields"). We affirm.

## I. BACKGROUND

The underlying facts of this case are undisputed. In 1992, Shields, a farming business, brought suit against EID alleging breach of contract. EID asserted in defense that the trial court lacked subject matter jurisdiction because of governmental immunity, but the trial court rejected that argument. In 1995, after a jury trial, the trial court rendered judgment that Shields recover from EID actual damages of $271,138.80 along with interest and attorney's fees. We affirmed the judgment. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 348 (Tex. App.—Corpus Christi 1997, pet. denied) (op. on reh'g). The Texas Supreme Court denied EID's petition for review on December 3, 1998, and it denied EID's motion for rehearing on January 21, 1999. 989 S.W.2d 360, 360 (Tex. 1998).[1]

More than fifteen years later, EID filed the instant suit seeking a declaration that the 1995 judgment is void because the trial court's assertion of jurisdiction was based on prior case law which has since been overruled. In particular, EID asserted that the earlier

---

[1] As of the date of this opinion, EID has not satisfied the judgment. EID notes that in 1999, it "began the process of requesting authorization to file for bankruptcy" from the Texas Commission on Environmental Quality ("TCEQ"). Shields opposed authorization; authorization was ultimately denied; and EID lost an appeal on the issue in 2008. *See Engelman Irrigation Dist. v. Tex. Comm'n on Envtl. Quality*, 251 S.W.3d 184, 191–202 (Tex. App.—Austin 2008, no pet.). In its opinion, the Austin Court of Appeals discussed the following background regarding Shields's efforts to enforce the judgment:

> Beginning in February 1999, [Shields] filed motions in the trial court to order [EID] to levy, assess, or collect taxes or assessments in order to pay the judgment. At that time, [EID] made its first "settlement and satisfaction of debt agreement" offer, proposing to pay [Shields] $50,000 upon full execution of settlement documentation, proceeds from the sale of all of its oil and gas mineral interests, and annual payments of $25,000 for seven years. [Shields] refused the offer. In response, [EID] declared itself unable to pay the [Shields] judgment and, in March of 1999, activated the bankruptcy-authorization process provided under the water code. . . . [Shields] opposed [EID]'s application and submitted evidence to [TCEQ] that [EID] did in fact have the ability to pay the judgment owed to [Shields]. As of May 31, 2002, the amount of the outstanding judgment with all of the accrued post-judgment interest was $789,893.52.

*Id.* at 188–89 (footnote and citations omitted).

2

ruling was justified on *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, in which the Texas Supreme Court held that a statute providing that a navigation district may "sue and be sued in all courts of this State" served as an effective waiver of governmental immunity on behalf of the district.  452 S.W.2d 812, 813 (Tex. 1971); *see Engelman*, 960 S.W.2d at 348 (concluding, based on *Missouri Pacific*, that immunity was waived and the trial court had subject matter jurisdiction because section 58.098 of the Texas Water Code provided that an irrigation district "may sue and be sued in the courts of this state").  However, in 2006, the supreme court overruled *Missouri Pacific* in *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006) ("[T]he holding of *Missouri Pacific* that 'sue and be sued', by itself, in an organic statute always waives immunity from suit is simply incorrect.").  Shields filed an answer, asserting in part that EID's claim is barred by res judicata, as well as a counterclaim asking that the trial court "order [EID]'s board of directors to levy, assess, and collect taxes or assessments to pay" the 1995 judgment. *See* TEX. WATER CODE ANN. § 49.066 (West, Westlaw through 2013 3d C.S.) (successor to former section 58.098; providing that an irrigation district "may sue and be sued in the courts of this state in the name of the district by and through its board" and that "[a]ny court in the state rendering judgment for debt against a district may order the board to levy, assess, and collect taxes or assessments to pay the judgment").

EID filed a motion for summary judgment on its affirmative claim, which the trial court denied.  The trial court then rendered an order (1) severing EID's affirmative claim from Shields's counterclaim, and (2) stating that "[EID] shall take nothing from [Shields]" and that "[t]his Order finally disposes of [EID]'s action for declaratory judgment and is

3

appealable."[2]  This appeal followed.

## II. DISCUSSION

EID raises three issues on appeal:  (1) the trial court lacked subject matter jurisdiction over EID in the 1992 suit; (2) because it lacked subject matter jurisdiction, the 1995 judgment is void and may be collaterally attacked at any time; and (3) "separation of powers require[s] courts to scrupulously refrain from exercising subject matter jurisdiction over governmental entities when the legislative branch has not granted such jurisdiction."  We will consider the issues together.

We review summary judgments de novo.  *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied).  As the facts are undisputed, EID bore the burden to show that it was entitled to judgment as a matter of law.  *See* TEX. R. APP. P. 166a(c) (providing that a movant for traditional summary judgment must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law).

EID argued in its motion that the supreme court "was not changing the law by its decision in *Tooke*, but correcting a misinterpretation that some courts had over the meaning of 'sue and be sued.'"  EID argued that the supreme court's "incorrect, and thus

---

[2] There was no trial, and Shields did not file any motion for summary judgment.  Therefore, the trial court's final judgment on EID's affirmative claim appears to have been premature.  Nevertheless, we have jurisdiction to consider the appeal because the order "clearly and unequivocally" disposes of all claims and parties pending in EID's declaratory judgment action.  *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) (noting that an appeal may ordinarily only be taken from a final judgment and that "when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties").  We note that EID, whose affirmative claim remained pending at the time of the final judgment, was the party that sought the severance order containing the language indicating finality.

overruled, decision in *Missouri Pacific* helped to foster these misinterpretations and led the Thirteenth Court of Appeals down the wrong path in its decision in *Engelman*." EID further contended that "[t]he Texas Supreme Court has previously acted to correct decisions which were [decided] pursuant to the incorrect interpretation of the law in *Missouri Pacific*," citing *Abilene Housing Authority v. Gene Duke Builders, Inc.*, 226 S.W.3d 415, 416–17 (Tex. 2007). There, the supreme court granted a petition for review and reversed the Eastland Court of Appeals' pre-*Tooke* ruling that the appellant housing authority's governmental immunity had been waived by "sue and be sued" language contained in the local government code. *Id.* EID argued that it did not waive the issue of subject matter jurisdiction because that issue can be raised at any time and may not be waived by any party. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). EID further argued in a supplemental summary judgment motion that res judicata does not apply because "[s]ubject-matter jurisdiction may not be conferred by consent, waiver, or estoppel at any stage or a proceeding." *Gainous v. Gainous*, 219 S.W.3d 97, 105 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("One may thus raise a collateral attack challenging a void order at any time, and res judicata is not a bar to the attack.").[3]

We find that EID's motions did not establish its entitlement to judgment as a matter of law. EID is correct that subject-matter jurisdiction cannot be conferred by consent or waiver; that a judgment rendered without subject-matter jurisdiction is considered void;

---

[3] EID's initial summary judgment motion included an affidavit by the President of EID's board of directors attesting to the facts set forth in the motion, as well as an affidavit by EID's counsel attesting as to attorney's fees. Shields filed a supplemental response to the summary judgment motion in which it objected to parts of the affidavits; the record contains no ruling on the objections. Nevertheless, because the facts are undisputed, we need not consider the affidavits in our analysis.

and that a void judgment may be collaterally attacked. *See Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005); *Dubai Petroleum Co., Inc. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("[A] judgment will never be considered final if the court lacked subject-matter jurisdiction."). Accordingly, if in fact the 1995 trial court lacked subject-matter jurisdiction, the doctrine of res judicata would not block EID's efforts to have the judgment declared void. *See Gainous*, 219 S.W.3d at 105; *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) ("A void judgment can be collaterally attacked at any time."). But that argument is contingent on a finding that the court rendering the 1995 judgment lacked subject-matter jurisdiction. On the other hand, if the court had subject-matter jurisdiction over the dispute, the judgment would not be void and would not be subject to collateral attack.

EID has established that, under *Tooke*, a trial court would not have subject-matter jurisdiction over a claim against an irrigation district such as the claim asserted by Shields. *See Tooke*, 197 S.W.3d at 342. But EID has not cited any authority establishing that judicial opinions such as *Tooke* may be applied retroactively in order to void judgments that have already been finalized and for which direct appellate review has been exhausted.[4] In fact, neither party directs us, nor did they direct the trial court in their summary judgment pleadings, to any case law regarding retroactive applicability of judicial opinions.

---

[4] *Abilene Housing Authority* is obviously distinguishable because the judgment in that case had not yet become final, and the Texas Supreme Court had not yet passed judgment on it, at the time *Tooke* was handed down. *See* 226 S.W.3d 415, 416–17 (Tex. 2007).

6

We observe that the Texas Supreme Court has held that "[a]s a rule, court decisions apply retroactively." *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (1999). "Exceptions are determined mostly by three factors":

> (1) whether the decision establishes a new principle of law by either overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether prospective or retroactive application of the particular rule will further or retard its operation through an examination of the history, purpose, and effect of the rule; and (3) whether retroactive application of the rule could produce substantial inequitable results.

*Id.* at 4–5 (citing *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 719 (Tex. 1996)). Here, the new "rule"—that is, the *Tooke* holding—clearly establishes a new principle of law and overrules clear past precedent upon which the litigants relied. *See id.*

In any event, even if we were to conclude that *Tooke* should apply retroactively, that does not mean that it can or should apply to cases that have already been decided on direct review and have already been upheld at all levels of appeal. In *Harper v. Virginia Department of Taxation*, the United States Supreme Court held:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases *still open on direct review* and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

509 U.S. 86, 97 (1993) (emphasis added). That is, even under *Harper*'s expansive ruling mandating retroactive applicability of judicial opinions, such opinions will be "given full retroactive effect" only in cases that are "still open on direct review." *See id.* The instant case has not been "open on direct review" since the twentieth century.

We note that the general "policy of the law" is to "give finality to the judgments of the courts." *Browning*, 165 S.W.3d at 345. This remains the policy even when

7

subsequent events cast severe doubt on the propriety of the judgment.  As the *Browning* Court noted:

> The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

*Id.* (quoting *United States v. Throckmorton*, 98 U.S. 61, 68–69 (1878)).  Allowing EID to reopen the issue of subject-matter jurisdiction fifteen years after it exhausted its appellate remedies would strike a mortal blow to this policy, and it would strongly encourage other judgment debtors to delay satisfaction of judgments indefinitely in the hopeful anticipation that the law may someday evolve in their favor.

Here, at the time the trial court considered EID's plea to the jurisdiction in 1995, *Missouri Pacific* was good law.  At the time we affirmed subject-matter jurisdiction in 1998, *Missouri Pacific* was good law.  And at the time the Texas Supreme Court denied EID's petition for review in 1999, thereby rendering the 1995 judgment final, *Missouri Pacific* was good law.  The trial court therefore had subject-matter jurisdiction over Shields's suit at the time the suit was filed, decided, and appealed.  Accordingly, the 1995 judgment is not void and may not be attacked collaterally, notwithstanding the holding in *Tooke*.

### III. CONCLUSION

We overrule EID's issues and affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
15th day of January, 2015.

8